# Hopkins, Appellant, *v.* Williamsport.

*Negligence—Municipalities—Defective sidewalk.*

In an action against a city by a woman thirty-eight years old to recover damages for personal injuries sustained by a fall on a slippery sidewalk, a judgment for defendant is properly entered non obstante veredicto, where it appears that the accident happened on a principal street of the city, in broad daylight, during very cold and inclement weather, and the plaintiff fails to show what was the cause of her injury, or any notice to the municipality of a defect in the sidewalk.

Argued March 11, 1904. Appeal, No. 23, Feb. T., 1904, by plaintiff, from judgment of C. P. Lycoming Co., June T., 1903, No. 167, for defendant non obstante veredicto in case of Parazette Hopkins and Mary Hopkins v. Williamsport. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before HART, P. J.

At the trial the jury returned a verdict for plaintiffs subject to the question of law reserved. Subsequently the court entered judgment for defendant non obstante veredicto, HART, P. J., filing an opinion which was in part as follows:

The evidence discloses that the injuries complained of were sustained by Mary Hopkins by a fall upon the sidewalk on Market Square, on the north side of West Third street, in front of the premises occupied by B. G. Kaplan, on Wednesday, February 18, 1903, about 9:30 in the morning, both bones in her forearm having been broken by the fall.

The weather conditions, as described in the testimony for the plaintiff, preceding the accident, beginning with the Sunday preceding, were as follows: Sunday morning, February 15, at 5:30 A. M., snow began to fall; one inch sleet and snow fell; thermometer twenty degrees above zero. Monday, February 16, at 5 P. M., began to snow; snowed seven inches; ceased snowing in the night; thermometer twenty-two degrees above zero. Tuesday, February 17, snow on ground eight inches deep; strong winds and snow drifting; thermom-

eter ten degrees above zero. Wednesday, February 18, snow flurries and strong winds; thermometer at zero.

Mrs. Mary Hopkins, in speaking of the general condition of the weather and of the streets on the morning of February 18, says, "It was very cold and very slippery."

It appeared that Mr. Kaplan on Monday, February 16, shoveled off the "top part of the snow and left a little crust at the bottom," in front of his premises, out to within about two feet of the curb (the sidewalk is fifteen feet wide at that place). It had snowed and sleeted the night before to the depth of one inch.

Mr. Breon, a witness for the plaintiff, in describing what was done by Mr. Kaplan the morning "after the deep snow fell," which would make it Tuesday morning, February 17, testifies that he and Mr. Kaplan shoveled the snow from the sidewalk, and says, "We had gone entirely over it to get the snow off, but you know there is ice that will cling very close unless it is salted. We did not get all the ice off. It was very slippery; it was ridgy. There is one place there, a stone probably five feet, that is a little bit higher, probably an inch higher, than the rest; and there is a stone out further on the walk that is sunken down. I know I used to have to wipe the water off when I would sweep the pavement off."

Q. What do you mean when you say there was a ridge? A. One place higher than another; out near the middle of the walk. Q. Just one spot? A. Not exactly.

The condition of the sidewalk is also described by Parazette Hopkins in this way: He says that his wife pointed out to him where she had fallen. She says, "Here is about where I fell." Again he says, "She says, 'Here is where I fell.' Q. Did she point out the place? A. She couldn't very well because I had my arm around her and her one arm was up in a sling. Q. Were you standing on the place where she fell? A. Yes, sir." He says the place was eight to ten feet out towards the curb, from the building, about five to six feet from the curb, and about six feet from the upper or west line of the Kaplan property and in front of the window of his store room. He describes it thus: "There was a ridge of ice there, running from probably five feet from the curbing in to near the center of the sidewalk, that formed a ridge. It extended toward the

building. It ran parallel with the curbing and with the building. Q. How high was that ridge of ice? A. I didn't measure it, but I judge it was probably three inches high, as near as I could judge. Sloping on a bevel probably forty-five degrees. Q. Had you traveled over this walk on Tuesday? A. I had. Q. What was the condition of the sidewalk on Tuesday? A. Close to the building it was all right. This ridge was there at that time. And says the half of the sidewalk next the building was free from ice and snow. Says it had drifted snow that (Tuesday) night. Q. You say you didn't measure it? A. No, sir. I judge it was three or four inches—that is the bevel. It was slanting towards the building."

Mrs. Mary Hopkins, in describing how she pointed out the place where she fell, to her husband, says: " When they put me in the cab to take me home, I turned around and I said, ' There is where I fell.' Q. To whom did you point the exact spot out? A. Mr. Hopkins. Q. Your husband? A. Yes, sir. I don't know just exactly where it was now, but I remember turning around as they put me in the cab and pointing out the place where I fell."

This is all the evidence we are able to find bearing upon the condition of the sidewalk in question, as it existed on Monday, Tuesday and Wednesday, February 16, 17 and 18, 1903.

The evidence of express notice to the city defendant of the condition of the sidewalk is confined to the fact that the street was daily patrolled by the city police, and to a conversation had with one Harry Lauer with Policeman Thompson on Monday morning, February 16, 1903, which is as follows : " Q. What did Harry Lauer say to you with reference to Kaplan's sidewalk at the time mentioned ? A. He says, ' Now I wonder if Kaplan is going to clean off the rest of the snow and ice.' I says, ' I guess he is ; he likely went into the store for something,' says I, but I says, ' I will give him a little time and if he don't I will go in and tell him.' "

I will be observed from this evidence that all the actual notice carried home to the city of the condition of the sidewalk was that presented on Monday morning, February 16, when the occupant of the premises had partially cleaned off the one inch of sleet which had fallen on Sunday night. There is no

evidence of the presence then of the ridge spoken of by Para-
zette Hopkins as existing on Tuesday.   Nor does Mr. Hopkins
say what time on Tuesday he observed this ridge.   From the
weather conditions on that day, with high winds and snow
drifting, such ridge might have been formed at any time in that
day.   And the slight oval rise and the generally icy condi-
tion of the street as described by the other witnesses does not
answer to the ridge which Mr. Hopkins says existed at the
place where Mrs. Hopkins fell, and which it is claimed caused
her to fall.

It is claimed on behalf of the city defendant that the evi-
dence bearing upon notice to the city of the condition of the
sidewalk, as well as the evidence descriptive of the manner
and cause of the fall of Mrs. Mary Hopkins, was not such as
warranted the submission of the case to the jury.

The plaintiff, Mary Hopkins, in describing her fall of the
morning of Wednesday, February 18, says : " Q. Detail to the
court and jury what happened as you went up Market Square
immediately in front of Kaplan's store?   A. Well, I can't tell
every detail, I fell so fast.   I went, crossing the street diagonally
to get to Mr. Harding's stand and I fell so quickly I could not
catch myself.   Usually in falling we can catch ourselves, but I
didn't slip ; I just fell.   I don't know anything about how I
did fall."

Elmer Breon, the only eyewitness to her fall, says : " Q.
Describe to the court and jury how she fell.   A. Well, I
didn't see much of it.   I just happened to glance up as the
lady was walking and I saw she walked as though she was on
slippery ground, and in a second she went down.   Q. Where
did Mrs. Hopkins fall on that sidewalk.   A. The view I had
from the right window, she fell directly in front of the right
window.   Q. How far out from the window ?   A. As near as
I can tell very near the middle of the walk.   The middle of
the width of it.   Q. What was the condition of the sidewalk ?
A. It was very slippery.   It was ridgy.   Q. You don't know
how she came to fall, do you ?   You don't know what threw
her down, do you ?   A. I think her slipping—   Q. You think
she slipped ?   A. I certainly think she slipped.   Q. You said
she was walking carefully ?   A. She walked carefully as she
struck this ice, and all at once she went down."

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*John E. Cupp*, with him *J. F. Katzmaier*, for appellant.

*Frank P. Cummings*, city solicitor, for appellee.

OPINION BY ORLADY, J., July 28, 1904:

On February 18, 1903, Mrs. Mary Hopkins when in perfect health and aged thirty-eight, sustained a fall upon the sidewalk about 9 : 30 in the morning, and recovered as damages therefor from the defendant a verdict of $1,000 ; the same jury returned a verdict in favor of Parazette Hopkins, her husband, for $500. At the time of the trial a question of law was reserved and judgment subsequently entered in favor of the defendant on the reserved question non obstante veredicto.

When on the witness stand Mrs. Hopkins, who is evidently an intelligent and conscientious witness, could not give any specific cause for her accident, her testimony being as follows : " Q. Detail to the court and jury what happened as you went up Market Square immediately in front of Kaplan's store. A. Well, I cannot tell every detail, I fell so fast. I went, crossing the street diagonally, to go to Mr. Harding's stand, and I fell so quickly I could not catch myself. Usually in falling we can catch ourselves, but I didn't slip, I just fell. I don't know anything about how I did fall. Q. As you walked along the pavement on Market Square, what were you doing ? A. I was looking for this stand, minding my business. I never look around very much when I get in the street. Q. Point out on the map to the jury about the place you fell. A. It is hard for me to tell. I don't know just exactly. It was right in here somewhere, I imagine so, I think so. I cannot tell because I fell so quickly. Q. Was it near the upper end of the store, or the lower side of the store ? A. I judge it was near about the middle, more possibly to the upper side, because I noticed when they put me in the cab to take me home, I turned round and said, ' There is where I fell,' but I don't know the exact spot now."

She was carrying a basket and some small packages on her way to market. She described the weather as being " dreadful

cold and windy and the pavement very slippery." Other witnesses, about whose testimony there was no controversy, described the weather on the four preceding days as being cold and stormy, sleet and snow falling, and the thermometer twenty degrees above and down to zero on the day she fell. Efforts had been made to clear the pavement of sleet and snow, which in part were successful, but owing to the severe cold weather the pavement was not entirely clear of snow.

It is in the common experience of all that injuries of this character may be caused without any negligence on the part of the municipality, and to entitle the plaintiff to recover, there must be not only a cause of action, but sufficient proof to convict the municipality of negligence in not maintaining a safe and sufficient sidewalk, after notice, actual or implied, of the existence of the defect: Burns v. Bradford City, 137 Pa. 361; Duncan v. Philadelphia, 173 Pa. 550.

In this case the plaintiff, very frankly, not only fails to give the cause for which the city would be liable, but says, " I didn't slip, I just fell. I don't know anything about how I did fall." There is no evidence in the record to explain the cause of her injury or evidence of notice to the municipality. The accident happened on a principal street of the city, in broad daylight, during very inclement weather, and there was no evidence to submit to the jury as to the city's liability.

The judgment is affirmed.